IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

_____

THE UNITED STATES OF AMERICA    :    3:20-cr-44-CAR

              VS.                :    October 9, 2020

MARQUET ANTWAIN BURGESS MATTOX :    Macon, Georgia
                  Defendant

_____


TRANSCRIPT OF ARRAIGNMENT/INITIAL APPEARANCE HEARING
BEFORE THE HONORABLE CHARLES H. WEIGLE,
UNITED STATES COURT MAGISTRATE JUDGE


APPEARANCES:

FOR THE GOVERNMENT:        SHANELLE BOOKER, AUSA
                           UNITED STATES ATTORNEY'S OFFICE
                           P. O. BOX 1702
                           MACON, GA 31202-1702


FOR THE DEFENDANT:         PRO SE

                           JARED WESTBROEK (Standby counsel)
                           FEDERAL DEFENDER'S OFFICE
                           P. O. BOX 996
                           MACON, GA 31202


_____

                    TAMMY W. DIROCCO, USCR
                        P.O. BOX 539
                    MACON, GA 31202-0539
                       (478-752-3497)

Tammy W. DiRocco * Federal Reporter * 478-752-2607

October 9, 2020.

3:15 p.m.

Macon, Georgia.

P R O C E E D I N G S

THE COURT:  We are back in session on October 9th, 2020.  And we are here for a continued initial appearance and arraignment proceeding in case 3:20-cr-44.  That is in the case of the United States versus Marquet Antwain Burgess Mattox.

He was here on Wednesday and I attempted, at that time, to inform the Defendant of the -- first of all the right to counsel.  That defendant does have the right to be represented by an attorney throughout the proceedings in this case, including the right to retain counsel himself or to have counsel appointed at the court's expense if the Defendant is unable to afford counsel.  The Defendant indicated, at that proceeding, that he did not wish to be represented by counsel.

I did ask the Federal Defender's office to come back today just to check in and see if there was any change of mind on that.  I just spoke with Mr. Westbroek a moment ago and I understand that Mr. Mattox still intends to represent himself in this case.

MR. WESTBROEK:  That's my understanding.  Yes, sir.

THE COURT:  All right.  Thank you.

Let me also restate, I think I tried to state on the

record on Wednesday that the Defendant does have the right to remain silent. That is that the Defendant does not have to make a statement or answer any questions about this case. That his silence cannot be used against him in any way in any of these proceedings but that any statement the Defendant does make could be used as evidence against the Defendant, including anything that is said in this proceeding which is on the record.

With that in mind, the next step in the case would be to review the counts in the indictment. And just to review the counts in the indictment:

This indictment is in the Athens Division, United States versus Marquet Antwain Burgess Mattox, also known as Marquet Antwain Burgess Mattox El, also known at Marquet Burgess Mattox, also known as Asim Ashunta El, also known as Asim El Bey, Defendant herein, Count One through Nine charge wire fraud pursuant to 18 U.S.C. Section 1343.

Charging at all times material to this Indictment: The Internal Revenue Service was an agency of the United States Department of Treasury. For the tax years 2015 and 2016 the IRS provided that estates and trusts entitled to a refund of federal income taxes could claim that refund by submitting a Form 1041 United States Income Tax Return for Estates and Trusts.

On the Form 1041 return, the estate or trust was

required to provide the estate's or trust's name and address, the name and title of its fiduciary, it's Employer Identification Number, its total income for the tax year, the amount of federal income tax withheld during the tax year, the amount of federal income tax, and the amount of tax due or refund claimed.

The IRS relied upon information from submitted Forms 1041 in determining and issuing refunds.  After obtaining this information, the IRS issued a refund to the taxpayer by mail, among other methods, if the trust or estate appeared to be entitled to a refund and there was no outstanding tax liabilities or other federally authorized deductions on record with the IRS.

Beginning no later than September 10, 2016 and continuing through at least August 10, 2018, in the Middle District of Georgia, Athens Division, and elsewhere, the Defendant herein, aided and abetted by others known and unknown to the Grand Jury, devised, intended to devise and participated in a scheme to defraud the Internal Revenue Service, and to obtain money by means of materially false and fraudulent pretenses, representations and omissions, as described in the following paragraphs.

In furtherance of the scheme to defraud, Defendant filed and caused to be filed false and fraudulent Form 1041 U.S. Income Tax Returns with the IRS for tax years 2015

through 2017 for the following twelve entities:

1. Kemahra Investment Trust.

2. Burgess Mattox Bey Investment Trust.

3. Burgess Mattox Bey Trust.

4. Marquet Antwain Burgess Mattox Trust.

5. Kamilya Investment Trust.

6. Kamili Investment Trust.

7. Watson El Trust.

8. Marshana El Investment Trust.

9. Asim El Bey Trust.

10. Eric Marice Baldwin El Trust.

11. Nwatson Trust.

12. Nycholas Kemahra Mattox El.

It was part of the scheme to defraud that for the above trusts, Defendant falsely claimed or caused to be falsely claimed on a total of at least thirty different Form 1041 tax returns that 1) the entity had earned fictitious "interest" income; and 2) federal income taxes had been withheld and paid to the IRS, entitling the trusts to refunds. In this matter, Defendant falsely and fraudulently claimed tax refunds for those purported trusts in the amount of approximately $165,212,271.00.

Defendant knew at the time he caused the submission of these Forms 1041 for tax years 2015 through 2017 that none of these trusts had any business activities, that the trusts

had not earned the income as claimed, and that the withholding payments had in fact not been made to the IRS as claimed.

On or about the dates set forth below, for the purpose of executing and attempting to execute the aforementioned scheme, and to obtain money and property by false and fraudulent pretenses, representations, and omissions, Defendant, with intent to defraud, caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, signals and sounds, namely, the false and fraudulent tax returns as listed below, each transmission constituting a separate count of this Indictment.

Count One, September 10, 2016, wire transmission is Form 1041 Tax Return for Kemahra Investment Trust, for tax year 2015.

Count Two charges on September 22, 2016, the wire transmission submitted was Form 1041 Tax Return for Burgess Mattox Bey Investment Trust, for tax year 2015.

Count Three, March 2, 2017, involving Form 1041 Tax Return for Kemahra Investment Trust, for tax year 2016.

Count Four, September 22, 2017, Form 1041 Tax Return for Burgess Mattox Bey Trust, for tax year 2016.

Count Five, November 17, 2017, Form 1041 Tax Return for Burgess Mattox Bey Trust, for tax year 2016.

Count Six, November 18, 2017, Form 1041 Tax Return for Burgess Mattox Bey Investment Trust, for tax year 2016.

Count Seven, November 18, 2017, Form 1041 Tax Return for Kemahra Investment Trust, for tax year 2016.

Count Eight, August 10, 2018, Form 1041 Tax Return for Burgess Mattox Bey Investment Trust, for tax year 2015.

Count Nine, August 10, 2018, Form 1041 Tax Return for Kemahra Investment Trust, for tax year 2015.

All in violation of Title 18, United States Code, Section 1343.

Counts ten through nineteen charge false claims against the United States Government under 18 U.S.C. Section 287, charging that the Grand Jury re-alleges and incorporates by reference paragraphs 1 through 6 of this Indictment as if fully set forth herein.

That on or about the dates set forth below, each date constituting a separate count of this Indictment, in the Middle District of Georgia, and elsewhere, Defendant herein, made, presented and caused to be presented to the Internal Revenue Service, an agency of the United States Department of the Treasury, a claim for payment of a fraudulent tax refund in each amount set forth below, knowing that such claim was false, fictitious, and fraudulent.  Defendant made each false claim by submitting Form 1041 tax returns falsely indicating that the taxpayer earned income, paid withholding to IRS and was entitled to a tax refund in the following amounts:

Count 10, September 10, 2016, to Kemahra Investment

Trust, tax year 2015, false income claimed $155,000, false withholding claimed $65,068, refund claimed $9,932.

Count 11, September 22, 2016, to Burgess Mattox Bey Investment Trust, tax year 2015, false income claimed $4,881,000, false withholding claimed 2,440,000, refund claimed $323,848.

Count 12, January 13, 2017, to the Burgess Mattox Bey Trust, tax year 2015, false income claimed $23,421,837, false withholding claimed $23,421,000, refund claimed $13,258,124.

Count 13, March 2, 2017, Kemahra Investment Trust, tax year 2016, false income claimed, $9,975,000, false withholding claimed $4,987,500, refund claimed $660,569.

Count 14, September 22, 2017, Burgess Mattox Bey Trust, tax year 2016, false income claimed $250,000, false withholding claimed $600,000, refund claimed $502,744.

Count 15, November 17, 2017, Burgess Mattox Bey Trust, 2016 tax year, false income claimed $17,660,000, false withholding claimed $17,660,000, refund claimed $9,997,779.

Count 16, November 18, 2017, Burgess Mattox Bey Investment Trust, tax year 2016, false income claimed $17,660,000, false withholding claimed $17,660,000, refund claimed $9,997,779.

Count 17, November 18, 2017, Kemahra Investment Trust, tax year 2016, false income claimed $17,660,000, false

withholding claimed $17,660,000, refund claimed $9,997,779.

Count 18, August 10, 2018, Burgess Mattox Bey Investment Trust, tax year 2015, false income claimed $4,$881,000, false withholding claimed $4,$881,000, refund claimed $2,764,804.

Count 19, August 10, 2018, Kemahra Investment Trust, tax year 2015, false income claimed $155,000, false withholding claimed $155,000, refund claimed $89,888.

All in violation of Title 18, United States Code, Section 287.

Count 20 charges the theft of government funds under 18 U.S.C. Section 641.

The Grand Jury re-alleges and incorporates by reference paragraph one of this indictment as if fully set forth herein.

Between on or about September 22, 2016 and on or about November 7, 2017, in the Middle District of Georgia, and elsewhere, Defendant herein, did willfully and knowingly steal, purloin, and convert to his own use, approximately $2,897,192.74 in United States funds administered by the IRS in the form of federal income tax refunds issued to Burgess Mattox Bey Investment Trust; all in violation of Title 18, United States Code, Section 641.

The indictment includes a forfeiture notice under 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. Section 2461(c).

The allegations contained in Counts One through Nine and Twenty of this Indictment are hereby re-alleged and incorporated by reference into this Notice for purposes of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense or offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Nine, and Title 18, United States Code, Section 641 as set forth in Count Twenty of this Indictment, the Defendant shall forfeit to the United States of America any property, real or personal, which constitutes, or is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of said violations including, but not limited to the following:

Number one, personal money judgment in an amount to be determined; and two, the real property located at 1054 Morgan Garner, Drive Lilburn, Gwinnett County, Georgia, including any appurtenances and improvements thereon, more particularly described as:

Being known and designated as all that certain lot, piece of land situate, lying and being in the City of Atlanta. Legal description: all that tract or

parcel of land lying and being in Land Lot 93 of the 6th District, Gwinnett County, Georgia being Lot 83, Block A, Garner Creek at Parkview Subdivision, Phase 1, as per plat recorded in plat book 124, pages 66 through 69, Gwinnett County records, said plat being incorporated herein by reference thereto.

If any of the property subject to forfeiture, as a result of any act or omission of the defendant cannot be located upon exercise of due diligence; has been transferred, sold to or deposited with, a third person; has been placed beyond the jurisdiction of the court; has been substantially diminished in value or has become commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to 18 U.S.C. Section 981(a)(1)(c) and 28 U.S.C. Section 2461(c).

Those are the charges as set forth in the Indictment.  The Defendant is presumed to be innocent of those charges unless and until proven guilty beyond a reasonable

doubt. The government will have that burden of proof at trial in the case and the Defendant will be entitled to a trial by jury in this case.

How does the Defendant wish to plead to the Indictment at this time.

THE DEFENDANT: Your Honor, is it okay for me to stand?

THE COURT: No.

THE DEFENDANT: Your Honor, would you give me an opportunity to speak?

THE COURT: Yes.

THE DEFENDANT: Thank you. My name is private and protected by the Fourth Amendment. I am the attorney-in-fact of the trademark being diluted here today as fully protected by the Lanham Act of 1946, trademark serial number 90234471.

I humbly and respectfully ask you, Your Honor, not to refer to me as "you" because "you" is a trust and I do not consent to "you", but that would just cause improper consent. I am the attorney-in-fact for the trademark being diluted as the attorney-in-fact. I have full power of attorney and have taken power of attorney over the misnomers due to dilution of the mark and also due to unauthorized use of the mark.

And also having full power of attorney I am in possession of private trust documents that I cannot disclose to the public nor share with the public. But I can disclose

to you and share with you in private that I believe will please the Court.

THE COURT:  All right.  Very good.  I will accept that as a plea of not guilty to the Indictment.  I'm going to enter a plea of not guilty on your behalf at this time.  I will enter that in the record of the court.

I'm going to give you a copy of the Indictment to have for your own use.

I'm going to enter a pretrial order in the case that begins the proceedings for pretrial discovery and pretrial motions and I'm going to give you a copy of that as well for you to review.

Now, you're going to proceed representing yourself in this case.  I'm going to have to conduct an inquiry pursuant to what we call the Faretta case.  That's an inquiry to make sure that you understand the nature and consequences of your decision to represent yourself and that you are competent to enter into that decision.

That's a lengthy inquiry and I'm not going to do that today.  We're going to come back in two weeks.  I would like to come back on Friday the 23rd of October, two weeks from today, at 2:30 in the afternoon to take up that issue.

In the meantime, I'm going to give you a form that has all of the questions that I'm going to be going over with you so you can look at those and think over those questions

and your decision in the case.

I'm also at this time going to, in an exercise of caution, appoint and ask the Federal Defender's Office to be stand-by counsel for you.  That is, they will not be representing you in court, but they will be available to answer any questions you have if you wish to speak with them. And any conversation you have with them would be subject to attorney-client privilege.  So I will have them be there to use if you want.  You don't have to if you don't want to.

We will come back in two weeks to talk about the issue of your decision to proceed pro se.

And now we do have the question of pretrial release to discuss here today.

Do you have a question you want to ask, Mr. Mattox?

THE DEFENDANT:  I ask would you respectfully give me -- I ask respectfully that you do not refer to me or call me "you" and I am the attorney-in-fact and I humbly and respectfully ask that you would give me an opportunity to disclose the private trust documents to you in private that I cannot disclose to the public.

THE COURT:  No.  That would be an ex-parte communication and that would be inappropriate in the case.

If you want to provide me with some documents those will be on the record.  If you otherwise want to get into that you might be able to discuss that with your standby counsel.

But I'm not going to have any ex-parte communications with you in this case.

I am not your lawyer and I'm not representing you. I'm the Court and everything you do here is on the record.

THE DEFENDANT:  One of the questions that was asked is how do you -- I respectfully and humbly ask that you not refer to me as "you" and I humbly and respectfully as far as plea, my father which art in heaven, hollowed be thy name, thy kingdom come, they will be done on earth as it is in heaven. Give us this day our daily bread and forgive us of our debts as we forgive our debtors.  Not lead us into temptation but deliver us from all evil.  For thine is the kingdom, the power and the glory forever.  Amen.

THE COURT:  Amen.  Very good.

Let's move on from that to discuss the issue of pretrial release in the case.

What's the government's position with regard to pretrial release, Mr. Ouzts?

MR. OUZTS:  You know, Judge, most of these white collar cases the government almost always recommends a bond. I'm sorry, can the court reporter hear me?  Sorry.

In most of these white collar cases we almost always recommend a bond.  But I think this is a bit of a very unique situation.  We have a very, very sophisticated and significant amount of fraud that is alleged in the indictment, as Your

Honor has read out, that totals over $165 million in attempted fraud there or intended loss. Millions of dollars are already paid out that's been alleged.

Very concerningly, you know, you look at his criminal history and he has a bit of a history of violence, albeit from the '90s, aggravated assault, terroristic threats, still very serious even though it's a little old.

But what's very concerning is the Defendant clearly does not appear to believe the Court has any authority over him. I think that is very concerning. I think there is a very, very clear and significant risk that if he is released today we might not ever see him again.

He has a lot of very different names. He goes by a lot of different aliases here.

But I think one of the biggest issues is, of course, his conduct on Wednesday afternoon. Today is not quite as bad however. It appears that he still does not recognize the authority of this Court. And I think if you let him out there is a strong chance that we will not see him again.

THE COURT: Tell me about -- I know the indictment alleges an actual loss to the treasury of something in the neighborhood of 2.3 million dollars.

Has the government been able to trace that money and recover any of that?

MR. OUZTS: I think there are -- I think they are

doing -- I think there has been some.  At least there is liens that have been placed as well as -- I think some of it has been levied.  No where near the amount of loss has been recovered at this time.

That is also another issue if he is allowed out there is, based upon his sophisticated means, he would probably be able to further liquidate and hide money that would rightfully -- should be forfeited to the government.

THE COURT:  The piece of real property that's referred to in the forfeiture notice, how much is that worth in the government's estimation?

MR. OUZTS:  My understanding is that it was paid in full was $600,000 in cash.  And we believe that money is directly traceable to the fraud.

THE COURT:  And I presume the government is entitled to that at this point or have taken some measures to -- from being alienated --

MR. OUZTS:  I believe the IRS has already placed a lien on it at this time.

THE COURT:  Anything else that the government wants to add?

MR. OUZTS:  Judge, just that we would ask that you detain him based upon his conduct and his refusal to recognize the authority of the Court.

THE COURT:  All right.  The Defendant?

THE DEFENDANT:  As the attorney-in-fact -- as the attorney-in-fact I would state that I do have someone here who can vouch for my character, someone here who could assure and guarantee of my whereabouts, that can assure and guarantee that I'm not a flight risk, that can assure and guarantee that the attorney-in-fact, if required, if ever required to appear the attorney-in-fact would -- there is someone here that could actually assure and guarantee that.

THE COURT:  Do you want to call a witness?

THE DEFENDANT:  I would like to call Mr. Taylor.

THE COURT:  Sir, if you will come up to the podium. Is that microphone on?  Stand right there behind that podium, pull that microphone up.

All right.  I want you to raise your right hand and the clerk is going to give you oath.

COURTROOM DEPUTY:  Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth, so help you God?

MR. TAYLOR:  I affirm.

COURTROOM DEPUTY:  Please state and spell your name for the record.

MR. TAYLOR:  Samuel Walsh Taylor. S-A-M-U-E-L, W-A-L-S-H, T-A-Y-L-O-R (spelling).

THE COURT:  Mr. Taylor, what do you want to tell me?

MR. TAYLOR:  Sir, I've known Mr. Mattox for over two

years now.  I'm actually his personal trainer.  He is a, from -- and this is my view point -- he's a man of great respect.  He has helped out a lot of people in our community. I never would consider him a flight risk.

He has -- and this is just from my experience -- even people that were members of my gym he went out of nowhere to just help them as far as if -- for whatever reason, if you had an issue, it would be counsel, it would be -- if you're taking care of some other issues.  I would never look at him as being a flight risk.  He's always been very manurable. He's always been very personal.  He's highly intelligent. Very intelligent brother, but I would not consider him a flight risk.

THE COURT:  Okay.  Thank you, Mr. Taylor.

MR. TAYLOR:  Thank you, sir.

THE COURT:  Does the government have any questions you want to ask?  Mr. Taylor, wait just a second.  Let me just see if the government wants to ask you any questions.

MR. OUZTS:  Just a few questions.  Sir, how often do you see Mr. Mattox?

MR. TAYLOR:  Four times a week.

MR. OUZTS:  Four times a week.  And for how long was that?

MR. TAYLOR:  Anywhere from an hour and a half to four hours per time.

Tammy W. DiRocco * Federal Reporter * 478-752-2607

MR. OUZTS:  Hour and a half to what?  I'm sorry.

MR. TAYLOR:  Four hours.

MR. OUZTS:  Is that in the capacity of personal training?

MR. TAYLOR:  A combination of that and we talk a lot.  We have very deep discussions.  And that's the part that kind of throws me off about the whole thing because I would never ever see us in this position.  I've never seen him defraud anybody or do anything like that.

MR. OUZTS:  So you didn't see this coming then; is that correct?

MR. TAYLOR:  No, sir.

MR. OUZTS:  And you're paid by him for your time?

MR. TAYLOR:  For the training, yes.

MR. OUZTS:  No further questions, Judge.

THE COURT:  Does the Defendant have any questions for Mr. Taylor?  Do you want to ask him anything?

THE DEFENDANT:  As the attorney-in-fact I would ask as far as my kindness.  How would you rate as far as my kindness?

MR. TAYLOR:  I would say you are a ten plus with kindness.

THE DEFENDANT:  And as far as my integrity.  How would you rate as far as my integrity?

MR. TAYLOR:  Ten plus.

THE DEFENDANT:  And as far as being a flight risk to run away from responsibility how would you rate as far as me being --

MR. TAYLOR:  There's no chance.  Absolutely no chance.

THE DEFENDANT:  And as far as you guaranteeing how assured are you in guaranteeing that the attorney-in-fact is not a flight risk?

MR. TAYLOR:  I would put my life on the line.

THE COURT:  All right.  Anything else?

THE DEFENDANT:  As the attorney-in-fact I don't think I have any other questions.

THE COURT:  Thank you, Mr. Taylor.  I know your friend appreciates your support.  You can go back and sit down.

Anything else that the defense wants to offer with regard to pretrial release?

THE DEFENDANT:  As the attorney-in-fact and in honor of the Fourth Amendment and in honor of due process, as the attorney-in-fact I would ask to be given the opportunity to go free.  I would be asked the opportunity as voluntarily on Wednesday, October the 7th to voluntarily appear if requested at a future date.  I would ask for the opportunity to voluntarily go free, to voluntarily appear if required.

And I would ask in honor of due process that it is

my understanding that pretrial U.S. probation and U.S attorney would appear premature at this point.

So I would ask, given the opportunity, based upon the witness, to appear as required.  To go free and appear as required and assure that I, the attorney-in-fact, is not a flight risk.

THE COURT:  All right.  Very good.  Thank you. Anything else from the government?

MR. OUZTS:  Judge, we'd just ask that you detain him based upon his conduct and refusal to recognize the authority of the Court.

THE COURT:  Well, with the standard under 3142 Bail Reform Act, this case the primary concern of the Court is regarding risk of non-nonappearance or flight.  That is, by a preponderance of the evidence, that no condition or combination of conditions would be sufficient to ensure the Defendant's appearance at trial or for other court proceedings in the case.

I take into account the factors in Section 3142(g) beginning with the nature and consequences of the offense charged.

I will note that this is not a violent crime or a crime involving controlled substances or a firearm.

I will note that it is a crime involving deception, fraud and substantial amounts of money as alleged in the

Indictment, at least the Grand Jury has found probable cause that this Defendant has defrauded the United States Government in excess of two million dollars which is not accounted for which would create a serious concern that the Defendant has in some place or other substantial resources that could aid in flight.  That he has sophistication in deception that would aid in flight.

I will also take into account the Defendant's character and his appearance in court proceedings.

I will note that the Defendant did appear on a summons on Wednesday.  The Court will note that the Defendant did appear on a summons on Wednesday as directed voluntarily.  And as the U.S. Attorney pointed out it's often the case in what we call white-collar crimes that a bond is recommended.  And I think the government may have been prepared to recommend a bond on Wednesday.  But the Defendant came into my courtroom, a United States courthouse, in front of a United States Judge behind a bench, wearing a robe, surrounded by court officials, and made an absolute shambles out of my courtroom, a mockery.  Had zero respect for the authority of this Court, the dignity of this Court.  You treated me like I was a joke.  You indicated repeatedly that you had no respect for the jurisdiction or authority of the United States Government.

You considered yourself to be somehow under a

trademark law, to be exempt from the laws of the United States.

I have zero confidence -- I appreciate Mr. Taylor's confidence in you and it sounds like you have had a very good relationship with him and he seems like a very nice man.  I have zero confidence in you.  I would not trust you to walk out that door on my directions.

I will not release you on conditions of release.  I'm going to order that you be detained by the United States Marshals service and kept in custody while this case is pending.  The Marshals service will make sure that you are available and present for any court proceedings in this case.

Our next court proceeding in this case will be on October 23rd, 2020 at 2:30 in the afternoon.  We will conduct a Faretta hearing to determine your competence to proceed representing yourself.

I'm going to give you, as I mentioned, a copy of the Indictment.  I'm going to give you a copy of the pretrial order that I'm entering in this case.  I'm also going to give you a copy of the Faretta factors that we're going to discuss when we come back in two weeks and I'm going to ask you questions about this.  And I have a feeling that your answer is going to be ridiculous, but I'm going to at least go through with those to try to confirm that you are competent.

I'm going to appoint the Federal Defender's Office

to provide you stand-by counsel so you'll have the option of communicating with them if you need any advice or assistance in this case between now and the time of trial.

Yes, you have a question?

THE DEFENDANT:  I have a question.  I would ask if to assure and guarantee two things, as the attorney-in-fact, I humbly apologize for the complete misunderstanding on Wednesday.

And as the attorney-in-fact I ask if Mr. Taylor would agree to pledge bond to guarantee this court that if Mr. Taylor agreed to pledge bond, guaranteeing my appearance, it guarantees the Court, it guarantees you, that as the attorney-in-fact I have never attempted to -- I have never knowingly -- it was a total misunderstanding on Wednesday.  As the attorney-in-fact I thought and assumed that in court you stand is what I thought.

So I ask if Mr. Taylor agreed to pledge --

THE COURT:  Now you just insulted my intelligence now.  I told you to sit down about six times and you looked at me like I was a joke.

THE DEFENDANT:  As I mentioned to one of your Marshals, several days ago, I mentioned that I completely, completely did not understand.

And I do ask that if Mr. Taylor agreed to pledge bond today to you to assure and guarantee that I appear on the

23rd as you are requesting, and I would ask Mr. Taylor if he would agree to pledge bond to secure and guarantee this Court that I am not a flight risk.  And if he's pledging bond -- I'm not exactly sure what the amount of the bond requirement, but if he's agreeing to pledge bond I do believe it will please the Court.

THE COURT:  All right.  Well, I have taken that request under consideration and my finding remains that there is a preponderance of the evidence to show that no condition or combinations of conditions of release will be sufficient to secure the Defendant's appearance at trial.

So I'm going to order that the Defendant be detained pending trial in this case.  And the Marshals will bring you back on Friday the 23rd.  We are done.

Anything else from the government?

MR. OUZTS:  Nothing further, Judge.

THE COURT:  Mr. Westbroek.

MR. WESTBROEK:  Judge, may I approach to get those documents?

THE COURT:  Yes.  And we probably need to get the last page of the Indictment that's not included in the --

MR. WESTBROEK:  I have a copy of the Indictment, Judge.

THE COURT:  If you will include the last page, please.

Very good.  Court is adjourned.

(Proceedings concluded at 3:54 p.m.)

END OF RECORD

CERTIFICATE OF OFFICIAL REPORTER


        I, Tammy W. DiRocco, Federal Official Court Reporter,

in and for the United States District Court for the Middle

District of Georgia, do hereby certify that pursuant to

Section 753, Title 28, United States Code, that the foregoing

is a true and correct transcript of the stenographically

reported proceedings held in the above-entitled matter and

that the transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


                        Dated this 21st day of May 2021


                        _____
                        Tammy W. DiRocco CCR
                        Federal Official Court Reporter

Tammy W. DiRocco * Federal Reporter * 478-752-2607