IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

———————————————————————————

THE UNITED STATES OF AMERICA    :    3:20-cr-44-CAR

          VS.                   :    October 23, 2020

MARQUET ANTWAIN BURGESS MATTOX :    Macon, Georgia
                    Defendant
————————————————————————————

TRANSCRIPT OF FARETTA INQUIRY HEARING
BEFORE THE HONORABLE CHARLES H. WEIGLE,
UNITED STATES COURT MAGISTRATE JUDGE

APPEARANCES:

FOR THE GOVERNMENT:      LYNDIE FREEMAN
                        UNITED STATES ATTORNEY'S OFFICE
                        P. O. BOX 1702
                        MACON, GA 31202-1702

FOR THE DEFENDANT:      PRO SE

STANDBY COUNSEL:        JARED WESTBROEK
                        FEDERAL DEFENDERS OF MDGA
                        440 MLK JR BLVD STE 400
                        MACON, GA 31201

——————————————————————————————————————————————————————————————

TAMMY W. DIROCCO, USCR
P.O. BOX 539
MACON, GA 31202-0539
(478-752-3497)

Tammy W. DiRocco * Federal Reporter * 478-752-2607

October 23, 2020

10:30 a.m.

Macon, Georgia

P R O C E E D I N G S

CSO OFFICER:  All rise.  The United States District Court for the Middle District of Georgia, Macon Division is now in session.  The Honorable Charles Weigle United States Magistrate Judge presiding.

Please be seated and come to order.

THE COURT:  Today is October 23rd, 2020 and we are here in case 3:20-cr-44 in the matter of United States versus Marquet Antwain Burgess Mattox for purposes of a hearing pursuant to *Faretta versus California* to determine whether the Defendant intends to proceed representing himself and to go through the inquiry to make sure that that is appropriate in this case.

So let me ask the Defendant, first, is it still your intention to proceed representing yourself in this case?

THE DEFENDANT:  Will you allow me to say something before I answer that question, please.

THE COURT:  Go ahead.

THE DEFENDANT:  I would like to humbly apologize to you and apologize to the court for disrupting the court.  And again I apologize to you and I wish to purge my contempt.

THE COURT:  We are done with the contempt.  I

definitely -- you are not in contempt anymore.  That was dealt with on Friday.  So that is taken care of and I understand and I appreciate your apology.

THE DEFENDANT:  Is it okay for me to have my -- I know there are some documents that you want from me.  Is it okay for me to have my right hand free so I can pass the documents, in addition to writing.

THE COURT:  That's fine with me, yeah.

THE DEFENDANT:  And to answer your question, yes.

THE COURT:  Very good.  I know I appointed the Federal Defenders to be available to you as standby counsel. Have you had any discussions with the federal defenders or with Mr. Westbroek about your interest in this case?

THE DEFENDANT:  I have not spoken with Mr. Westbroek.

THE COURT:  Well, let me explain what we're here to do.  And, of course, I've given you that document I gave you to look over and I want to go through some of that material here on the record today.

Essentially, as we discussed at the initial appearance, any defendant does have the right to be represented by an attorney in their trial and for all the proceedings in the case, and that does include the right to have appointed counsel.

And I had initially decided you were eligible for

appointed counsel so I asked the Federal Defenders Office to appear with you.

Now you also have the right -- a defendant has the right to represent himself in court. That right is subject to some other issues and we want to go through that.

First of all, I just need to make sure that you're making this decision with your eyes wide open and understand the disadvantages of proceeding pro se. And that's the purposes of this inquiry is to just be clear on the record that you understand your rights and that this decision is being made understanding the consequences of the decision.

I know we went over it at the initial appearance but Ms. Freeman would you just remind the Court for the record what the sentencing ranges are for the charges that are involved in this case.

MS. FREEMAN: The Defendant is charged with nine counts of wire fraud. The statutory maximum sentence for wire fraud is 20 years in prison. The maximum fine is $250,000 per count and maximum supervised release is three years.

He is also charged with ten counts of false claims against the United States in violation of 18 U.S.C. 287. The maximum sentence for a violation of 287 is five years in prison with a $250,000 fine per count and three years maximum supervised release.

Count 20 he is charged with theft of United States

government funds.  The maximum penalty for that is 10 years in prison, another $250,000 fine and three years of supervised release.

THE COURT:  It's 20 counts in total, Ms. Freeman, is that right?

MS. FREEMAN:  Yes, Your Honor.

THE COURT:  I just want to confirm, as the government just outlined, you are charged in 20 counts in this indictment.

The first nine counts of wire fraud each would carry a maximum term of 20 years incarceration and up to a $250,000 fine, along with a $100 mandatory assessment for each count.

The ten counts of false claims would each carry a possible term of five years in prison and up to a $250,000 fine and $100 mandatory assessment for each count.

And, then, finally that theft of government funds charge would carry a maximum term of 10 years and $250,000 fine, along with a mandatory assessment of $100.

Do you understand that those are the charges and the possible sentencing ranges that go along with those charges?

THE DEFENDANT:  I wasn't aware of that until just now.

THE COURT:  Well, we did discuss that back when we were here two weeks ago.  But obviously there was a lot going on.

Do you understand that if you are found guilty of more than one of those charges that the Court could order the sentences to be served consecutively. That is one sentence after another.

Do you understand that?

THE DEFENDANT: But if I -- but there would be an option as far as an appeal at some point if --

THE COURT: Appeals are possible in a case, of course. But I just want to make sure you understand that all of those sentences that the Court outlined, the sentencing ranges, that they could be served consecutively.

Do you understand that?

THE DEFENDANT: (Nodding affirmatively.)

THE COURT: You need to say it out loud just so we are clear.

THE DEFENDANT: I'm understanding what you are saying.

THE COURT: Okay. And have you ever heard of the Federal Sentencing Guidelines?

THE DEFENDANT: I have not.

THE COURT: Well, there are sentencing guidelines that have been mandated by Congress and they guide and advise courts on how to sentence, depending on a verdict of guilty. So I want to make sure you understand that. The Court would be guided by those guidelines in any sentence if you are found

guilty of any of these crimes.

THE DEFENDANT:  Okay.

THE COURT:  It's critical that you understand that if you represent yourself you are on your own which means the Court is not going to be able to give you legal advice.  You will have to make your own decisions.

Do you understand that?

THE DEFENDANT:  I did go through the questionnaire and I answered the questions as you instructed and I have those prepared.

THE COURT:  Good.  I won't go through all of those questions then, but I do want to go through some basic things with you here in person just to make sure.  And we'll get that form from you as well, that will be helpful.

So you have gone through that form and you've read each one of those questions and you've checked off your answer one way or the other on that form?

THE DEFENDANT:  I did.  Will you allow me to pass it to you, please?

THE COURT:  Yes.  I will.  Thank you.

I notice you state that you did not understand the charges against you or what the possible penalties are in case you are found guilty of all those charges.  But we did just discuss that.

Do you understand that now?

THE DEFENDANT:  We did just discuss that and I did not have clarity prior.

THE COURT:  And, of course, you have a copy of the indictment and we went over the indictment with you as to what the specific facts of those charges are.  But you have that?

THE DEFENDANT:  Correct.

THE COURT:  I won't go through each one of the questions you filled out on the form but I want to go through some critical things.

I mentioned that if a defendant proceeds pro se the defendant is on his own and can't have the Court provide legal advice or assistance.

So let me just go through some of the specifics of that.  Have you ever heard of the Federal Rules of Evidence?

THE DEFENDANT:  I have heard of it.

THE COURT:  Well, the Federal Rules of Evidence govern what evidence is admissible in court and is not admissible in court.  And if you proceed pro se you will be required to abide by the rules of the Federal Rules of Evidence.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And they will not be relaxed for your benefit.  The Court is not going to give you any breaks on those rules because you are not a trained lawyer.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Have you ever heard of the Federal Rules of Criminal Procedure?

THE DEFENDANT:  Not of criminal procedure.

THE COURT:  You've heard of the Federal Rules of Civil Procedure?

THE DEFENDANT:  I've heard of it.

THE COURT:  Well, there are also Federal Rules of Criminal Procedure.  They are similar.  They are not the same, but they are in a similar vein.

And those Rules of Criminal Procedure will govern the way the case is tried in federal court and you will be bound by those rules as well as the Federal Rules of Evidence.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Well, I am obligated by the Faretta case and other cases just to advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself and it is unwise of you to try to represent yourself.  You are not familiar with the law.  You are not familiar with court procedure.  You are not familiar with the Rules of Evidence.

Lawyers spend years and years training, learning those rules, in addition to spending years and years in and

out of court rooms, talking to judges, talking to juries and they have all the advantages of that training and experience that you do not have.

So I have to strongly urge you not to try to represent yourself.  That it is almost always a mistake.

But having given you my thoughts on that and the thoughts of courts in general, in light of the penalty that you might suffer if you are found guilty and it light of all the difficulties of representing yourself and the form you have goes into some more details about things a lawyer can do for you that you can't do for yourself.  And you have obviously read that and gone through it and so I won't go through each of those details.

In light of all the difficulties of representing yourself do you still desire to represent yourself and to give up your right to be represented by a lawyer?

THE DEFENDANT:  Now, if I'm giving up -- if I'm waiving the right to be represented by an attorney today but if I have questions in the future I think you are saying that I wouldn't have the right or the opportunity to ask those questions.  Is that correct?

THE COURT:  Well, I will probably continue to have the Federal Defenders Office provide you with standby counsel.

Let me say this, if you change your mind at any time

you can be represented by an attorney but it may -- the Court is going to be unlikely to be granting you any extensions of time if you wait until the last minute to decide you want a lawyer.  You may have to go forward with that lawyer not having had the chance to get prepared in the case.

So keep in mind that you can change your mind in this case but it's not necessarily going to change the schedule of the case or the trial or how the court proceeds.  You're not going to get any favors or special benefits because you are proceeding representing yourself.

Does that make sense?

THE DEFENDANT:  It does make sense.  Can I ask a question.

THE COURT:  Yes.

THE DEFENDANT:  Do you know the schedule?

THE COURT:  I do not.  Judge Royal will be setting the schedule in this case.  I don't think he has scheduled a pretrial conference yet.

Of course, my pretrial order, which I will get you a copy of so you will have that, will outline what the schedule is for pretrial discovery or any other motions that need to be filed.

Did we give him a copy of the pretrial order?  I did give you a copy of the pretrial order that explains the schedule for pretrial matters.

But Judge Royal will be setting the schedule for the trial or any other matters that have to be decided before trial.

THE DEFENDANT: Would I have the opportunity to actually study, to prepare and study?

THE COURT: You would have whatever opportunity you have. I mean, the fact that you are detained is going to make it somewhat more difficult for you to do that. And that's something that is mentioned in this list of forms -- this list of questions mentioning that some of the disadvantages of representing yourself is that you may have limited access to the U.S. Attorney and make it more difficult to communicate and work out any kind of resolution for the case.

It may also make it somewhat more difficult for you to engage in discovery and other matters given that you've been detained in this case.

And, again, one of the consequences of self representation is accepting some of those disadvantages.

THE DEFENDANT: What are the possibilities of a bond to have the opportunity to prepare and study?

THE COURT: Well, at this point I have entered an Order of Detention in the case and I don't have any reason to reconsider that order.

THE DEFENDANT: Can you repeat that first part, please.

THE COURT:  I have entered an Order of Detention in this case.  We had a detention hearing back two weeks ago and I entered an Order of Detention and I have no reason to reconsider that order.

And, again, you are bound by the statute, 18 U.S.C. Section 3142 has some provisions about when the court and how the court can reconsider an Order of Detention but none of those circumstances appear today.

THE DEFENDANT:  I got the first part.  Enter the Order of Detention hearing.  And there was another part.  I'm writing as fast as you're speaking.

THE COURT:  Well, we're getting to the point now where you're asking me for legal advice and I told you before that you don't get free legal advice from the Court.  My job is not to be your lawyer.  My job is to be the Judge.

If you want to talk to Mr. Westbroek and ask him some of these questions you're welcome to do that.

THE DEFENDANT:  I'm only attempting to write as fast as you're speaking.  I apologize if it sounds as if I'm asking legal advice.  You said you entered an Order of Detention hearing.

THE COURT:  I entered an Order of Detention after a detention hearing two weeks ago.  That Order of Detention has been entered and there is no reason to reconsider that order today and I'm not going to reconsider that order today.

THE DEFENDANT:  Just one moment.  Your Honor, to please the Court, I made a full conveyance to and for the account of the United States to please the court and you have that conveyance to and for the account of the United States and making that full conveyance for the account of the United States for discharge of all purposes of the obligation and the person making the same and no person shall be held liable in any court for anything done or omitted in good faith.

In making that conveyance to and for the United States I think that, is it my understanding, that it please the court?

THE COURT:  Is it your understanding that what?

THE DEFENDANT:  A full conveyance to and for the account of the United States.  The conveyances of the true bill.  Conveyances of the true bill having conveyed to and for the account of the United States and making the conveyance to and for the account of the United States should be a full acquittance and discharge for all purposes of the obligation and the person making the same.

I'm asking is it my understanding that that pleases the court?

THE COURT:  That doesn't please me or not please me. I'll tell you what it is.  It's nonsense.  And all that blah, blah, blah about conveyance is utter nonsense.  We hear it in court all the time.  We call it a sovereign citizen theory or

Tammy W. DiRocco * Federal Reporter * 478-752-2607

redemption theory and it's nonsense.  It's empty words.

And a lawyer would tell you that.  Any good lawyer would tell you that all of this convey and assign and whatever, it means nothing.  It's gibberish.  You can say it all you want to but it's not going to change the way this trial proceeds.

The trial is going to proceed according to the Federal Rules of Evidence, Federal Rules of Criminal Procedure, the laws and statutes of the United States as interpreted by the Supreme Court in the Eleventh Circuit Court of Appeals.  That's where you are.

THE DEFENDANT:  Your Honor --

THE COURT:  And I'm sorry if that hurts your feelings, but you need to face reality.  This stuff is not magic that's going to get you out of these charges.  It's just nonsense.

THE DEFENDANT:  Your Honor, I am not a sovereign citizen.  I'm not exactly sure -- I am an American Indian by blood but I am not a sovereign citizen.  As far as what the sovereign citizen -- I'm not a sovereign citizen.

And as far as reading, I know you said that as far as sovereign citizen jargon, as far as reading that is actually something that I actually read and I don't think it was a sovereign citizen document.

THE COURT:  Well, whatever you read either you read

it wrong or it was not something worth reading.  That's all I can tell you.

And that's why I say you are better off having a lawyer who has read statutes and cases and laws and rules and knows how they apply in a court of the United States.

Now, I will just say -- I have been doing this job for a long time.  I do it every day.  And this stuff means nothing to me.  It has no meaning.  I don't even know what it means.  It's not the language we speak in this courtroom.

You got to understand when you come into court you've got to speak the language of the court, that's the Rules of Evidence, the Rules of Criminal Procedure, the law of the statutes of the United States.  And a trained attorney could help you do that.

THE DEFENDANT:  I was not aware -- the last hearing I was not aware that that was a detention hearing.  I was under the impression that that was for the contempt of court.

THE COURT:  Well, again if you had had a lawyer he could have explained to you what was going on and I made it pretty clear what was going on from the beginning.

Of course the first day you wouldn't listen to me. I kept trying to explain to you what was going on and you kept shutting me down and that's why we had the contempt.

And then we came back and had a detention hearing and an arraignment on that Friday.  That's what that

proceeding was.  The contempt was over.

MS. FREEMAN:  Your Honor, for purposes of clarity of the record, if the Defendant's questions just now was construed to be a motion to reopen the issue of detention does Your Honor have a ruling for that?

THE COURT:  Well, to the extent that are you moving to reopen the detention hearing at this time?

THE DEFENDANT:  Yes, I would like to visit that.

THE COURT:  On what grounds?

THE DEFENDANT:  I would say on the grounds that I wasn't completely aware that was an actual detention hearing.

THE COURT:  Well, I don't find that particularly credible not only because I explained that both days.

But also you dealt with it as a detention hearing. You had your friend here.  I can't remember his name, Mr. King maybe, who spoke on your behalf and asked the Court to grant a bond.  He offered to put up his own money on your behalf for a bond.  That sounds like a bond hearing, doesn't it?  That's exactly what that was.  And I considered those arguments.  You had a chance to speak to me.  You apologized for your behavior.  We went through all of that and I made my decision based on what was presented there.

Is there any new information that you did not have available to you at that time that you have to present here today?

THE DEFENDANT:  On that Wednesday on the 7th I was under the impression that we were reconvening or revisiting on the 9th and I was under the impression that we were still revisiting the same -- because of the interruptions on the 7th I was under the impression that we were revisiting because of the interruptions.  I wasn't aware that it had gone into a different hearing until -- an arraignment hearing into a detention hearing all in one.  I was still thinking that we were still at the contempt of court.

THE COURT:  Well, that's because you weren't listening.  Because I went over it multiple times.  And you were not listening to me because you wanted to make your points.  You know, you made your bed.

THE DEFENDANT:  Things were going a little fast. Things were going a little fast.

THE COURT:  Well, to the extent that you're moving to reopen the detention hearing at this time I find no basis to do that and, therefore, I'll deny that motion.

Let's get back to the main question of today.  Is it still your intention to proceed representing yourself in this case?  Having gone through all the disadvantages and issues that are involved in self representation, is it still your intention to proceed representing yourself?

THE DEFENDANT:  At this time, yes.

THE COURT:  And is that decision entirely voluntary?

THE DEFENDANT:  Yes.

THE COURT:  Well, I do find based on our discussion that the Defendant has knowingly and voluntarily waived the right to counsel and I will, therefore, permit the Defendant to represent himself in this case.

Now, I have appointed the Federal Defenders Office to provide you with standby counsel.  So if you change your mind you can get in contact -- you have contact information for Mr. Westbroek.  You can call him up and tell him that you want to have a lawyer and you can let me know and we can change that and you can have a lawyer.  But keep it mind that you're not going to get any special benefits with regard to time if you wait to the last minute to have a lawyer.  Your lawyer may have to proceed based on the court's timeframe.

And one other thing I should remind you is also as this form, that you signed and checked off, points out if you are disruptive in court the Court can revoke your self representation and order that you be represented by counsel.  Because this trial is going to go forward and it's going to go forward with all of the dignity and orderliness that is expected of a federal trial.  And if in court you start to disrupt the Court can and will revoke your right to self representation and order that you be represented regardless of your will.

So you will have to keep in mind that representing

yourself you're going to have to follow all the rules of the court, all the Rules of Evidence, the Rules of Civil Procedure, the rules of just basic decorum and civility and the failure to do so could result in revoking your rights of self representation.  So just keep that in mind as well.

So I'm going to continue to have the Federal Defenders Office appointed as your standby counsel.  If you need to talk to them you've got their contact information.  If you change your mind you've got their contact information.  But the sooner you do that the better it's going to be for you if you do want to be represented by an attorney.

The documents that you have given me I will have those entered into the record.  I'm going to give those to the clerk now so those will be on the record, as well as our discussion here today.

Are there any other matters that we need to take up in this hearing for the government?  Let me ask the government first.

MS. FREEMAN:  Your Honor, with regards to the service of detention and compliance with the standard pretrial order we are preparing that currently, it is voluminous and would need to be on a disk.  Our intention is, unless Your Honor has a different instruction, is to serve that on his standby counsel.  As the nature of printing it would probably not be something physically feasible for someone in

detention to take custody of.

MR. WESTBROEK:  Judge, I think -- I'll be more than happy to take service of an electronic copy.

THE COURT:  Can you get closer to a microphone.

MR. WESTBROEK:  I'm more than happy to take service of the copy that the government is describing at this point.

However, that would require meeting with Mr. Mattox and because he has decided to represent himself he is not taking meetings with me at this time.  So I think it would prevent Mr. Mattox from having the opportunity to review that discovery.  So I think it has -- a copy has to go to Mr. Mattox.

MS. FREEMAN:  Your Honor, we can serve the disk on both parties.

THE COURT:  Well, let's begin with that.  I do want any discovery that is provided to the Defendant to be provided to standby counsel so that they will at least have an access to it.

MR. WESTBROEK:  Yes, sir.

THE COURT:  So y'all serve the discovery as you are able to do and we will deal with any issues that come up with regard to that in the due course of whatever pretrial proceedings are going on.

Anything else that the government needs to take up?

MS. FREEMAN:  No, Your Honor.  I believe we have

covered all the requirements of Faretta and as it is interpreted by Fitzpatrick in the Eleventh Circuit.

THE COURT:  Anything from the defense?

THE DEFENDANT:  The actual Faretta form that you have, if I'm not mistaken, the instructions said not to sign until after.

THE COURT:  Okay, you didn't sign that.  Let me give that back to you if you want to sign it.  I'm sorry.  I forgot that.  Thank you for reminding me.

THE DEFENDANT:  (Signing Faretta document).

THE COURT:  Thank you.  I will note just for the record that you have signed that form, the Faretta notification form, that I give you here in my presence and I witnessed that that is your signature on there.  And we, of course, have gone over some of that on the record here as well.  So I think we have covered everything and then some.

And I am sure at this point that this is your decision and it is made with full knowledge of the consequences and advantages and disadvantages that would be involved.

So anything else from the defense before we conclude?

THE DEFENDANT:  Not at this time.

THE COURT:  Very good.  That concludes our business for this morning.  We will be in recess until 1:30 this

Tammy W. DiRocco * Federal Reporter * 478-752-2607

afternoon when we start our initial appearance calendar.

CSO OFFICER:  All rise.

(Proceedings concluded at 11:08 a.m.)

END OF RECORD

CERTIFICATE OF OFFICIAL REPORTER


    I, Tammy W. DiRocco, Federal Official Court Reporter,

in and for the United States District Court for the Middle

District of Georgia, do hereby certify that pursuant to

Section 753, Title 28, United States Code, that the foregoing

is a true and correct transcript of the stenographically

reported proceedings held in the above-entitled matter and

that the transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


                        Dated this 7th day of June, 2021


                        _____
                        Tammy W. DiRocco CCR
                        Federal Official Court Reporter