IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

_____

THE UNITED STATES OF AMERICA    :    3:20-cr-44-CAR

            VS.                 :    July 14, 2021

MARQUET ANTWAIN BURGESS MATTOX :    Athens, Georgia
                   Defendant
_____


TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE C. ASHLEY ROYAL
UNITED STATES COURT DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:       LYNDIE FREEMAN, AUSA
                          JESSICA KRAFT
                          UNITED STATES ATTORNEY'S OFFICE
                          P. O. BOX 1702
                          MACON, GA 31202-1702


FOR THE DEFENDANT:        PRO SE


STANDBY COUNSEL:          CATHERINE WILLIAMS
                          FEDERAL DEFENDERS OF MD GA
                          440 MLK JR BLVD STE 400
                          MACON, GA 31201


_____

TAMMY W. DIROCCO, USCR
P.O. BOX 539
MACON, GA 31202-0539
(478-752-3497)

July 14, 2021

10:46 a.m.

Athens, Georgia

CSO OFFICER:  All rise.

THE COURT:  And take your mask off, please.

THE DEFENDANT:  Good morning.

THE COURT:  Take it all the way off if you are more comfortable with that.

THE DEFENDANT:  Thank you.

THE COURT:  Are you okay today?

THE DEFENDANT:  Yes, sir.  How are you today?

THE COURT:  I'm fine.

So this case is currently scheduled for trial on August 16th and you are proceeding pro se.  Ms. William is back behind you, but Ms. Williams understands that she is standby counsel and that the only time she is supposed to participate in any part of this hearing or in the trial is if you ask for her help.  And I think we have made that clear before and I think you understand that; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you still want to proceed on your own?

THE DEFENDANT:  (No response).

THE COURT:  Do you still want to represent yourself?

Tammy W. DiRocco * Federal Reporter * 478-752-2607

THE DEFENDANT:  That is correct, sir.

THE COURT:  So I want to go over several matters about the case and how it's going to be conducted.

First, I would like to know how many counts there are in the indictment?

MS. FREEMAN:  Your Honor, there are nine counts of wire fraud.  There are 10 counts of 287 and one count of theft of government funds.

THE COURT:  So we have 20 counts.

How long do you think it will take to try this case? You have given me an estimate before, but I want to hear what it is today.

MS. FREEMAN:  Your Honor, we anticipate we may have up to approximately 14 witnesses, given that there are not stipulations in this case.  It is very document intensive.  We will have a lot of documents to authenticate.  I anticipate that would be at least two full days of testimony but, you know, we don't know how cross might go.

THE COURT:  Okay.  That's fine.

One of the important stages of a jury trial, Mr. Mattox, is choosing the jury, what's commonly called voir dire.  And that's what we do first.

The jury is brought in and sworn in and checked in. And I am going to ask the jurors any voir dire questions that you would like for me to ask the jurors, and also the same for

the government.

And so submit to me any voir dire questions that you have by August 6th, which is a little bit more than a week before trial. That is the Friday. Submit those to me and I will look at those and decide whether they are appropriate or not.

I will have some of my own questions that I always ask, just general questions about do you know the defendant, do you know the prosecutor, do you know anything about the case, so forth and so on. It's very unlikely that anybody will know about this case, but we always ask those questions.

I will say that in this particular case, this is a criminal case, of course, so the government will have six strikes and the Defendant will have ten.

And I will tell you that I am considering striking the jury in a little bit different way than what I have done in the past. And that is basically to -- it's essentially a double blind striking in which the government exercises their six strikes and the Defendant exercises his ten strikes and whatever is left is the jury.

Do y'all understand that?

So it's not going to be any crossing back and forth. It's just you pick your 10 and you pick your six and we go there. You strike your 10 and you strike your six. I haven't decided on that yet, but I'm thinking about that. It might

end up that way.

Do y'all have any questions about that?

MS. FREEMAN:  No, your Honor.

THE DEFENDANT:  I don't have any questions about that in particular.

THE COURT:  All right.

Now, I do want any proposed jury charges on the day that the trial begins.  So that will be on the 16th.  So if you want the Court to charge something, submit those charges to me and I will consider those.

It's very common for the Court to come up with the jury charge based on what the charge books recommend and we have been very successful with that over the years, but we are always willing to listen to any proposed charges that you might have.

Now, Mr. Mattox, I have made substantial efforts to make sure that you have gotten a transcript of all the hearings, and it's my understanding that you have received a transcript of all the hearings that we have had.  And some part of one or more of those hearings, I remember one in particular, where I made certain rulings as a matter of law about potential defenses that you might want to raise in this case that as a matter of law are not available to you.  One of those is that you are not subject to the jurisdiction of the Court.

I want you to go back and review those and make sure that you don't attempt to raise those in the trial of the case because they have already been ruled out and they are preserved for purposes of appeal.

So if you don't like the rulings that I have made then you can appeal those rulings to the Eleventh Circuit.

Do you understand that?

THE DEFENDANT:  Your Honor, when you say in regards to "not subject to the jurisdiction of the Court" I'm not sure that that has ever been raised by --

THE COURT:  Well, I thought you told me somewhere along the line -- and I haven't looked at this recently -- that you didn't think that you should be in this court.  That the Court didn't have power over you.  I will have to look back at that.  Maybe I didn't say that.  I don't remember. But between now and the time of the trial I'm going to go back and I'm going to look at what was stated in these various hearings.  And my point is that you need to do that too because I've already ruled on those.  All right?

THE DEFENDANT:  Okay.  But I would respectfully like to say that I don't think I have ever said that.

THE COURT:  Okay.  Well, maybe I misunderstood. Like I say, I'm going off of memory now and it was probably at least a month ago that I made these rulings, and as a consequence of that I don't remember exactly what the rulings

were.  But I'm going to go back and look and I want you to go back and look.

Now, Mr. Mattox, is there anything that you would like to raise or bring to the Court's attention.  Do you have any questions?  I'm here to answer those questions.

THE DEFENDANT:  Yes, sir.

THE COURT:  Go ahead.

THE DEFENDANT:  Your Honor, I would like to mention that there is no controversy here.  Please kindly note that certified copies of the private trust documents that was delivered to the court for the private estate or delivered to Departamento De Hacienda De Puerto Rico via special deposit on August 2015 to Honorable Juan Zaragoza, former secretary of treasury, and confirmed received by Senor Ivan Caraballo Ortiz, October 2015 and also confirmed received, processed and approved by Senor Ivan Caraballo Ortiz via Senora Hilda Garcia, supervisor, Inheritance Department, Departamento De Hacienda De Puerto Rico, January 2016.  In which I am the occupant and the beneficiary of the estate and Departamento De Hacienda De Puerto Rico confirmed that the estate trust can pledge portions of the estate i.e. collateral i.e. intangible personal property in exchange for capital i.e. convert to money on the best terms available to reduce the public debt which is verifiable via Señora Hilda Garcia, supervisor, Inheritance Department, Departamento De Hacienda De Puerto

Rico.

The aforementioned were disclosed to Internal Revenue Service agents, et cetera, identified as follows: Jerome Clark and Michael Buritio April 2019.  Susan Freeman and Patricia Crowe around October 2019.

Please kindly note, that Señora Hilda Garcia will also confirm that collateral i.e. intangible personal property from the private estate in the amount of fifty million (50,000,000) for a term of thirty (30) years was assigned and delivered to Departamento De Hacienda De Puerto Rico around September 10th, 2020 as surety to and for the United States to preemptively settle and reduce any liability, public debt, and to guarantee that the beneficiary i.e. me, Marquet Antwain Burgess Mattox El, is free from being kidnapped, injured or held for ransom.

Senora Hilda Garcia will also confirm that additional collateral i.e. intangible personal property from the private estate for an additional fifty million (50,000,000) for a term of thirty (30) years was also assigned and delivered to Departamento De Hacienda De Puerto Rico around September 10, 2020 as surety to and for the State of Georgia to preemptively settle and reduce any liability, public debt, and to guarantee that the beneficiary i.e. me, Marquet Antwain Burgess Mattox, El, is free from being kidnapped, injured or held for ransom.

In which a combine sum certain one hundred million (100,000,000) in collateral i.e. intangible personal property from the private estate was preemptively delivered to Departamento De Hacienda De Puerto Rico as surety around September 10th, 2020 which is verifiable via Senora Hilda Garcia, Inheritance Department, Departamento De Hacienda De Puerto Rico.

Therefore, all liabilities and public debt for this and any other matter for the next thirty (30) years for the beneficiary i.e. me, Marquet Antwain Burgess Mattox El, were preemptively reduced and settled in advance.  Prior to the issuance of the true bill in which the detention order and this entire matter was in error.

I, Marquet Antwain Burgess Mattox El, the beneficiary am the only real party interest to the private trust documents that were delivered to the court on October 23rd, 2020 and certified copies delivered to Departamento De Hacienda De Puerto Rico August 2015 and the private estate that's recorded and on deposit Departamento De Hacienda De Puerto Rico.

So, Your Honor, there's no controversy here.

THE COURT:  Okay.  Well, wait just a minute. Haven't I already ruled this out or is this something new?

MS. FREEMAN:  Your Honor, I'm not entirely sure. But it is part and parcel of the alleged scheme that is

charged that many of these statements were made to the IRS prior. However, they appear to be in relation -- if I'm interpreting his words -- to the settling of debts. Debts are not what is at issue in this criminal indictment. It is the scheme to defraud that involved filing materially false tax returns about income and withholding that were not accurate or true.

THE COURT: Okay. Well, this is what we need to do. Is that handwritten or typed? You read from it word by word. Is that correct, Mr. Mattox?

THE DEFENDANT: Pretty much read --

THE COURT: Well, what I would like to do is get a copy of that. And I will get a copy and I'll give the court reporter a copy and Ms. Freeman a copy and I will look at it.

So, Jessica would you take that in and ask Gail to make some copies, please.

Mr. Mattox, this is a criminal case. It's not a civil case.

In a civil case if you owe someone money and you pay that money then that would very likely be the end of the case.

But this is a criminal case. It involves questions of criminal conduct. It involves questions of violation of criminal law, federal law. And the fact that you may have paid off the debt or in some way indemnified the government or -- I didn't catch everything that you said -- it doesn't

matter in this case.  It's your criminal liability that's at stake here.

Now, obviously, the government -- do you have a forfeiture in this case?

MS. FREEMAN:  Yes, Your Honor, that is one of the matters we wanted to discuss today.

THE COURT:  Okay.  So we have a forfeiture in this case and I think they've already gotten some money, but I think there is money that is outstanding.  That's a component of this case.  But the fact that they have got all the money back wouldn't affect your criminal liability in this case.

So I really thought that I had ruled on something -- I don't remember anything about Puerto Rico but I thought I remembered ruling on something very similar to what you just said and that I said that it was not a defense to this case.

And so I don't -- I will have to look back at that and compare it to what you just said.

Didn't you submit a check or something like that?  I don't remember.

MS. FREEMAN:  There was a concocted financial document submitted, Your Honor.

THE COURT:  Right.  Do you remember that you --

THE DEFENDANT:  Say again.

THE COURT:  She said that there was a concocted

Tammy W. DiRocco * Federal Reporter * 478-752-2607

financial document.

There was something that you submitted and I told you I was going to read that and rule on it.  And I did read it and I did rule on it and I ruled against you.  It sounds very similar to this.

THE DEFENDANT:  There were private trust documents submitted to the Court and you mentioned that you haven't seen the actual private trust documents.

THE COURT:  You sent those to me.  It looks like what I told you was that your name is not protected by the Fourth Amendment.  Your name is not protected under the Lanham Act trademark.  That you are attorney in fact for the trademark.  That your trademark is being diluted by using it in court.  That you are not subject to the power and jurisdiction of the court.

I couldn't have gotten -- maybe there was a misunderstanding.  But there was the issue of conveyances to and for the account of the United States.  And it sounded like that's what you were telling me just then.

So what I'm going to do is I'm going to go through and I'm going to read this, what you just read into the record.  I'm going to read it --

THE DEFENDANT:  Yes, sir.

THE COURT:  And having read it if it changes my mind then I will let you know, but I don't think it's going to

change my mind.  And that's not a defense to the case.

So you will not be able to argue that to the jury in this case or present evidence of it.

THE DEFENDANT:  Your Honor, you also mentioned that there were private trust documents that was actually delivered to the court and you mentioned that you were going to have another court to get those private trust documents to you because you hadn't seen or reviewed those private trust documents.

THE COURT:  I thought that you had submitted those to me and I reviewed those.  I think I reviewed everything in the record.

I talked to Judge Weigle.  I asked Judge Weigle to give me anything, any of the records that came in at the two hearings he had with you, and I reviewed those.

THE DEFENDANT:  The actual private trust documents?

THE COURT:  I think that was one of them.

THE DEFENDANT:  If you would give me a moment, please.

THE COURT:  Go ahead.

THE DEFENDANT:  You mentioned that Judge Weigle was out-of-town and you mentioned that you was going to have Judge Weigle's secretary to get the private trust documents over to you and you said you should have them by the beginning of the following week and you was going to have her, that particular

day, to get those private trust documents.

THE COURT:  Well, that's what happened.

THE DEFENDANT:  Okay.

THE COURT:  That is what happened.  That's what I did.  And I talked to Judge Weigle about it and we got her to submit those to the court and I have dealt with all of that.  That's not a part of the case.  That's excluded.  It's not a defense as a matter of law.

THE DEFENDANT:  So were those private trust documents -- were they lost?  Do you still have those private trust documents?

THE COURT:  Did we put those in the record?  What did we do with those?  Do you know?  Nora, do you know?

We will look back.  The court reporter is going to put this in the record and, of course, it will be a part of the record because she's going to take down what you said.  But we will make this as an exhibit to the record and we will look back.

I really thought that I had said that everything that I got from Judge Weigle would become a part of the record.  So we will check back on that and we'll make sure that it became a part of the record.  And if it didn't then we'll put it in the record.

THE DEFENDANT:  Your Honor, if I'm not mistaken, the Plaintiff mentioned something in regards to a check that was

submitted.

THE COURT:  I could've been wrong about that. There were some documents that were submitted to me that I reviewed.

THE DEFENDANT:  Okay.

THE COURT:  I thought they had something to do with the trust proposition that you are arguing here.  I think part of my confusion is that what is stated in this, the statement that you just made, sounded different from what I looked at before, and I don't remember anything that had all this information in it.

So I'm going to go back and I'm going to look but I don't think it's going to change my mind about anything.

THE DEFENDANT:  I would like to ask this question, Your Honor.

THE COURT:  Okay.

THE DEFENDANT:  In regards to the alleged controversy here -- and I know you said you're going to go back and read the documentation.  Due to the fact that Departamento De Hacienda De Puerto Rico confirmed that all the documentation, including the private trust documents that was delivered to the court, have been received, processed and approved.  I know you have to go back and read the documents, but does that not have any validity in this court?

THE COURT:  No.  Not in a criminal case.  No.

Do y'all know anything about what he's talking about?

MS. FREEMAN:  We have some understanding from his prior submissions to the IRS about submitting documents to Puerto Rico.  But we concur, Your Honor, that submitting any documents to Puerto Rico about the settling of various debts, whether they've been confirmed to be received or not, has zero bearing on the criminal charges in this case.

THE COURT:  Do you have the documents that were submitted and accepted in Puerto Rico?  Do you have those documents?

THE DEFENDANT:  The private trust documents were delivered to Judge Weigle on October 23rd and certified copies of these documents were delivered to Departamento De Hacienda.  And the last time we was here you mentioned that you hadn't seen or hadn't received copies of those private trust documents.

THE COURT:  Okay.  So it sounds like I have seen those because I have seen everything that was submitted.

What else?  What other questions do you have?

THE DEFENDANT:  You mentioned that several things were ruled out and they would -- they were ruled out and if I wanted to use them I would have to file an appeal.

If I'm not mistaken, are you ruling out the Fourth Amendment or are you ruling out the United States

Constitution?

THE COURT:  Well, what I'm doing is I'm ruling out the argument under the Federal Rules of Evidence.  And your argument is that it's protected by the Fourth Amendment.  Your argument is it's protected by the Constitution, which is essentially the same thing, and the Lanham Act.  This argument is not a basis for -- it's not legally sufficient to submit to the jury as a defense to these charges.

THE DEFENDANT:  And in regards to nationality as an American Indian that is actually guaranteed by the United Nations Declaration of the Rights of Indigenous People that was signed into law by President Barack Obama, am I understanding that correctly that you ruled that out as well?

THE COURT:  Yes.

THE DEFENDANT:  Okay.  If I'm not mistaken you also mentioned that in regards to the actual previous motion that was filed -- bear with me.  The motion for revocation of detention order, you mentioned that you were going to revisit that.

THE COURT:  I really thought I had ruled on that. I'm sure that we took that up in court and I ruled that you should continue to be detained.

Haven't we had the discussion about how much money was still out there and that this was a sophisticated way of deceiving the IRS.  That you obviously are a sophisticated

person, if you are able to do this and -- so you are not going to be released.

THE DEFENDANT:  Your Honor, with all due respect, as I have mentioned, I have not deceived the Internal Revenue Service as I mentioned.  I know you're going to read the documents in regards to Departamento De Hacienda.  But as I mentioned in regards to the documentation that was submitted to Departamento De Hacienda De Puerto Rico in regards to -- Departamento De Hacienda De Puerto Rico confirming that portions of the estate could be pledged to Departamento De Hacienda De Puerto Rico in exchange for capital, i.e. converted to the best terms of -- converted to money on the best terms available.  That was all confirmed through Senora Hilda Garcia, supervisor of the Inheritance Department, Departamento De Hacienda De Puerto Rico.  And I'm saying inheritance as an American Indian.  But you have ruled out any mentioning of American Indian.

THE COURT:  That's right.  That's right.  It's not admissible in a criminal case.

THE DEFENDANT:  Okay.

THE COURT:  It has no validity.  It carries no weight.  And it's not admissible.  So that's out.

THE DEFENDANT:  Okay.

THE COURT:  All right.  What other questions?

I'm here to answer your questions today about any

Tammy W. DiRocco * Federal Reporter * 478-752-2607

aspect of this case, my rulings, how the case will be tried, what needs to be done.  I'm here to answer your questions.

And I'm going to give the government the opportunity, in just a minute, to do the same.

THE DEFENDANT:  Now, if I have any questions after the government speaks will I be allowed to ask them?

THE COURT:  Sure, sure.

THE DEFENDANT:  Okay.  Thank you.

THE COURT:  All right.

MS. FREEMAN:  Your Honor, first I wanted to make sure to introduce trial attorney Jessica Kraft who is here from DOJ Tax Division in DC.

THE COURT:  Welcome.

MS. KRAFT:  Good morning, Your Honor.

MS. FREEMAN:  She's filed an appearance in this case and will also be prosecuting this case against Mr. Mattox.

THE COURT:  All right.

MS. FREEMAN:  With regard to the motion to strike the forfeiture portion regarding Mr. Mattox's former residence in Lilburn, Georgia.

In discussions with the IRS we believe that is the proper action at this time is to strike that specific property forfeiture from the indictment and it will be settled through civil process instead.

So at this point there would be no need for a

bifurcated proceeding.  There would only be a money judgment pursued.

THE COURT:  So there's not going to be a forfeiture proceeding?

MS. FREEMAN:  Correct.

THE COURT:  Okay.  That simplifies things.  Thank you very much.

MS. FREEMAN:  And we'll defer to the Court's instructions on how you would like us to redact the indictment for presentation.

THE COURT:  Well, I think that -- I'm not sure that the form of it matters very much probably.  Is it the last -- at the very end of the indictment?  Where is it in the indictment?

MS. FREEMAN:  Yes, Your Honor.  It's towards the very end.  It's before the signature of the true bill from the foreperson.

It is not on it's own separate page such that we could cleanly excise it that way.  It does overlap with other allegations.  There is a portion in the middle on page 7.  And we don't think it has to be redacted.

THE COURT:  Let me see it, please.  Well, it looks to me like it basically takes up all of page 7 and part of page 8.

MS. FREEMAN:  We would submit that the -- it's

really Roman Numeral II regarding the house, but that the personal money judgment in an amount to be determined language be left in the indictment for purposes of post-verdict preliminary order forfeiture motion.

THE COURT:  Okay.  So tell Mr. Mattox specifically what you would like to take out and let's see if he agrees to that.

Do you understand what we are talking about here, Mr. Mattox?  There is a forfeiture claim here against you and if you are found guilty then the jury would have a separate kind of mini hearing on the forfeiture.  But the government is not going to proceed in that fashion.

And so we are trying to redact the indictment based on that.

So what do you want to take out?

MS. FREEMAN:  Your Honor, we would propose just the portion of Roman Numeral II.  So that is about four lines into that big paragraph.  So starting from "and Roman Numeral II" all the way to the end of the plat description and then leaving regular number 3 to the end.

THE COURT:  Do you have an objection to that, Mr. Mattox?

THE DEFENDANT:  Does that consist of a new indictment?

THE COURT:  No, it's not a new indictment.

Basically what she's going to do is just wipe this out or cover it over or something so these words aren't in there. It's just going to confuse the jury if it's in there. It seems like the simplest thing to do.

THE DEFENDANT: If she takes it out or if she removes it -- at this particular moment -- can we come back to that question because I'm not exactly sure how to answer that question at this particular moment.

THE COURT: That's fine, we can come back to that. This is really a clerical proposition. It doesn't really add to your criminal exposure in this case. It's really just removing some wording so the wording won't confuse the jury. They sit back there and they read about this but they don't hear anything about it and they wonder, well, why is that in there. And then they send me a question and I have to explain why it's in there. And then -- it's just better if it's not in there.

THE DEFENDANT: At this point or at this moment it appears that there are two different actions simultaneously in regards to the Internal Revenue Service and the United States District Court or am I misunderstanding?

THE COURT: No, no, no. That's not what it is at all. This would be a standard part of what happens in a case like this. It's just a component, one component of a case like this. It's not a separate case.

THE DEFENDANT:  Unless I missed something.  Did she mention that, the reason or the purpose for removing it? I understand what you're saying in regards to the jury, but I --

THE COURT:  Go ahead and explain it again, Ms. Freeman --

THE DEFENDANT:  Thank you.

THE COURT:  -- specifically what you want to do, how it will be done.  I'm not talking about the indictment now because I think you've made that clear.  But why are you doing this and what impact does it have on Mr. Mattox.

MS. FREEMAN:  Mr. Mattox, what we are proposing is to strike the reference to your house in the forfeiture portion of the indictment.  And the reasoning for that is that we do not intend to present a forfeiture allegation regarding your house in trial.  There may be reference to your house, but it won't be regarding the forfeiture.

The house, we believe, will be -- has a lien against it already under the civil case that you have with IRS, which I believe you are familiar with Revenue Officer Freeman and her folks there.  So that's why it doesn't need to be in this criminal indictment any more.

THE COURT:  Do you understand, Mr. Mattox?

THE DEFENDANT:  Just a moment, please.

THE COURT:  Okay.

THE DEFENDANT:  With all due respect I would prefer to -- humbly I would prefer to leave it.  And I apologize if you have to explain to the jury, I humbly apologize, but I would respectfully like to leave it as is.

THE COURT:  And what is the reason for that?

THE DEFENDANT:  Because I'm not totally understanding the different moving parts and pieces as far as the Plaintiff removing this part.  That part I'm not completely understanding.

THE COURT:  Okay.  Well, this is what we're going to do.

THE DEFENDANT:  Okay.

THE COURT:  I'm going to withhold the ruling on this.

THE DEFENDANT:  Okay.

THE COURT:  I'm going to ask Ms. Freeman to prepare the proposed indictment the way she has proposed it to the Court.  All right?

THE DEFENDANT:  Okay.

THE COURT:  And then I will decide before the indictment is supposed to be submitted to the jury whether or not I'm going to rule in favor of her on this issue.

But this is something I want you to do.  I want you to talk to Ms. Williams about this, okay.  Just get her advice about this.

Tammy W. DiRocco * Federal Reporter * 478-752-2607

Ms. Williams?

MS. WILLIAMS:  Yes, sir.

THE COURT:  Did you hear all this?

MS. WILLIAMS:  Yes, sir.

THE COURT:  I'm recommending that he ask you about that.

MS. WILLIAMS:  Yes, sir.

THE COURT:  If he doesn't want to that's fine.  But I think because this is a technical -- on the one hand it's sort of a technical proposition, but it's really just a clerical proposition here in terms of what we do with this indictment.

And there has been discussion previously in this court about the fact that there is a civil proceeding in this case.  And you know about that.  I know about that.  I've heard about that.  So that's what we're going to do.

I'd like for you to talk to her about it.  And I will do the final ruling on it at the appropriate time, after you have had the opportunity to think about it some more and consider it some more.

What else, Ms. Freeman?

MS. FREEMAN:  Your Honor, with regard to proposed scheduling.  Is it your understanding that we will probably block off that entire week?

THE COURT:  Yes, I think so.

There is one little matter that I need to take up with my staff and we may actually not start this case until 1:00 o'clock in the afternoon.  So we will see.

I think that we can get the jury in and pick the jury and get the case started if we start at 1:00 o'clock. But there is one little element of this that I need to talk to them about.

So I will let you know whether it's going to be -- typically we get the jurors in and a lot of times we start picking a jury by 11:00 o'clock.  So we will see about that.

MS. FREEMAN:  And, Your Honor, with regard to exhibits.  Is there a particular procedure Your Honor would like to implement as far as when we disclose exhibits to the court or to each other?

THE COURT:  I think that what needs to be done is that you need to come up with some notebooks of the exhibits. They need to be indexed.  And I think you need to send a copy of all that to the Defendant.  And I think that needs to be done a week before the trial, okay.

And we will deal with the exhibits.  I will encourage you, as I do in every case, criminal or civil, do not put in any documents that really aren't necessary for the trial of your case.  It doesn't pay.  It doesn't pay.  So that is my admonition to you on that.

And, then, we will deal with those as we go, I

Tammy W. DiRocco * Federal Reporter * 478-752-2607

suppose.  I don't anticipate any particular problem with the exhibits.

What else?

MS. FREEMAN:  Will Your Honor want a trial brief prior to the commencement of trial?

THE COURT:  Yeah, that would be great.  Submit that.

What else?

MS. FREEMAN:  Those are all my questions, Your Honor.

THE COURT:  Okay.  Good.

All right, Mr. Mattox, back to you.

THE DEFENDANT:  During the actual trial, am I shackled and sitting here doing the actual trial?

THE COURT:  I'm going to have to talk to the Marshals Service about that.  That is one of the other little details that I need to take up with them about that.  I usually leave the security measures up to them.  But we will see.

We will talk about that and we will talk about the trial beginning.

What else?

THE DEFENDANT:  Dress code.  Am I wearing orange?

THE COURT:  That is really kind of the same question.  Do you have other clothes that you can put on?

THE DEFENDANT:  Only the clothes that pretty much --

my personal clothes that I had on when I went to court on October 7, 2020, which is basically only, I guess, one set of -- only those clothes that I have.  As far as a week long trial?  I do not have a weeks worth of clothes at the jail.

MS. WILLIAMS:  Your Honor, if he would like, I could contact family members and see if they have clothing that they would help provide him, if he would like?

THE COURT:  How does that sound?

THE DEFENDANT:  I would prefer not to accept.

THE COURT:  That's fine.

THE DEFENDANT:  Thank you.  But if a family member was able to provide clothing to the U.S. Marshals, whether here or whether -- would that be permissible?

THE COURT:  Probably.  But I need to talk to them about it.  Why don't you proceed with that plan that somebody will give you some clothes so you don't have to wear the orange.  We will proceed with that plan and then I'm going to talk to the Marshals Service about how we're going to conduct this.

THE DEFENDANT:  And can you tell me the actual dates again.

THE COURT:  The 16th of August.

THE DEFENDANT:  August 16th, for the entire week?

THE COURT:  Yes.  We are reserving the entire week. It's difficult to tell how long this is going to last and a

lot of documents.  Documents tend to slow cases down.  There are 20 counts.  That's a lot for the jury to work with.  That's part of it.  It's not just the length of the trial.  We have to give some consideration to the duration of the deliberations.  So we have to consider that.

THE DEFENDANT:  Okay.

THE COURT:  Anything else?

THE DEFENDANT:  No, sir, Your Honor.  Thank you for your time.

THE COURT:  Anything further?

MS. FREEMAN:  Nothing from the government, Your Honor.

THE COURT:  Okay, very good.  Thank you very much.

MS. KRAFT:  Thank you, Your Honor.

(Proceedings concluded at 11:38 a.m.)

END OF RECORD

CERTIFICATE OF OFFICIAL REPORTER


        I, Tammy W. DiRocco, Federal Official Court Reporter,

in and for the United States District Court for the Middle

District of Georgia, do hereby certify that pursuant to

Section 753, Title 28, United States Code, that the foregoing

is a true and correct transcript of the stenographically

reported proceedings held in the above-entitled matter and

that the transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


                        Dated this 5th day of August, 2021


                        *Tammy W. DiRocco*
                        _____
                        Tammy W. DiRocco CCR
                        Federal Official Court Reporter